# Phelps *v.* Sill.

## In the Court below,

## THOMAS SCHUYLER SILL, *Plaintiff*; NOAH PHELPS, Esq. *Defendant.*

THIS was an action on the case, stating, that in July, 1789, the plaintiff was a minor of nine years of age, and had no parents living; that he resided in the Probate District of Simsbury, of which the defendant was judge, and was *the owner and legal possessor of* $2000 *worth of personal estate*, which was well known to the defendant; that the plaintiff being incapable to elect a guardian, the defendant, on the 19th of July, 1789, did, as Judge of Probate for said District, appoint and constitute, *Earl Stanley* his guardian, who accepted the office; that the defendant caused all the property of the plaintiff, to be delivered into the hands of *Stanley*, to the amount of $2000; that *Stanley*, when appointed, and long before, was a man *of no property, and a notorious bankrupt*, and *that well known to the defendant*, at the time of said appointment; that the defendant neglected and refused to take any security from said *Stanley*, for the faithful discharge of his office and duty as guardian; that *Stanley*, soon after the receipt of the defendant's property, squandered and spent the whole amount thereof, and absconded, and had resided in parts unknown to the plaintiff, and ever since had continued a bankrupt; and that the defendant had never called *Stanley* to any account of his guardianship, but had wholly neglected and refused to do the same.

When the cause was on trial to the jury, on the general issue, the plaintiff offered *Stanley* as a witness, to show, that when he was appointed guardian, the defend-

An action will not lie against a Judge of Probate, for neglecting to take security from the guardian of an infant, although such infant had personal estate, and the guardian was a bankrupt.

The allegation that the plaintiff was owner, and legal possessor, of $2000 worth of personal property, is not a sufficient description of that property.

Nor is the want of a more particular description, cured by verdict.

ant did not enquire of him what his property was, or whether he had any. This enquiry was objected to, because the defendant was then acting in a judicial capacity, and it was not proper to enquire into the evidence he had, or might have had, or upon which he acted. This enquiry was admitted as pertinent to the issue ; and a bill of exceptions filed. After verdict for plaintiff, there was a motion in arrest for the insufficiency of the declaration ; and the declaration was adjudged sufficient.

The errors assigned were,

1. That the declaration ought to have been adjudged insufficient.

2. That *Stanley* ought not to have been examined to prove the facts objected to.

*Daggett*, for the plaintiff in error.

1. There is not sufficient certainty in the description of the property. The allegation, that the defendant was possessed of $ 2000 worth of personal property, is as general as possible. There is no instance, where one man may call upon another for damage to property, without describing that property. (*a*) And the reason assigned is, that the judgment may be pleaded in bar to another action. Lord MANSFIELD says, however, that the true reason is, that the defendant cannot justify, unless the particulars are specified. But we admit, that less certainty in the description of the property is now required in trover, and trespass, than formerly. (*b*)

(*a*) 7 *Vin. Abr.* 383, 4. 5 *Co.* 34, *Plater's case.* 1 *Salk.* 287, *Martin* v. *Hendrickson.* 1 *Stra.* 637, *Wyat* v. *Effington.* *Cro. Eliz.* 817, *Wood* v. *Smith.* 4 *Bur.* 2455, *Bertie* v. *Pickering.*

(*b*) 2 *Stra.* 738, *Radley* v. *Rudge.* *Id.* 809, *Bottomley* v. *Harrison.* *Id.* 827, *White* v. *Graham.*

It was as necessary, that *Phelps* should be informed of the nature of the property, as it would have been, that the guardian should have been informed, had the suit been against him. Such an allegation would not have been sufficient in a replication upon a probate bond. Even in book debt, the party must give oyer, and, after that, may not vary his claim. If an action were brought against an attorney, it would not be enough to say, that he had received $ 2000 worth of notes, and squandered them ; nor would such a description answer, in a suit against an officer, for not levying upon goods tendered to him ; nor in a suit against a third person, for secreting goods from an officer.

In this case, the plaintiff should have told what the property was ; or at least, whether it was contained in the inventory, at the Probate office. Had this been done, we might have proved, that the plaintiff never owned some part of it, and that he had received and destroyed another part.

2. There is not sufficient certainty, as to the neglect of duty charged. The allegation is " wholly neglecting, and refusing, to take any SECURITY." There is no allegation, that he neglected to take a *bond*, but merely that he did not take *security*. The bond of the guardian, even with *certain sureties*, would not be any *security*, as the case might be. This allegation, therefore, does not negate the idea of his taking the bond of the guardian. The term *security*, as used in the statute concerning replevins, (c) &c. does not mean *surety*, but *safety*. The term is used in the statute relating to attachments, (d) precisely in the same sense, as it is in the statute respect-

(c) *Stat.* 360.                    (d) *Stat.* 24, 227.

ing guardians; and the Superior Court, under that statute, have always decided, that the bond of the plaintiff is sufficient security, where the plaintiff is responsible. The statute requiring the plaintiff to give bonds on taking out execution against an absent debtor, (*e*) speaks of a bond with *sureties*. The statute relating to appeals (*f*) adopts the same expression. So, special bail is to consist of *sufficient sureties*. The authority signing a writ of error, must take a *bonds with surety.* (*g*) The sheriff and the treasurer are to give *bond*, with *sureties.* (*h*) But in the statutes relating to attachments, appeals from Probate, and the old statute relating to guardians, a different language is used; there *sufficient security* is to be given. (*i*) The allegation, that the judge has not taken sufficient security, is consistent with his having taken the bonds of the guardian himself; and this he might have done, under the statute, which was in operation, when this transaction happened. The court will never enquire, whether the judge has made a mistake, as to the property of this man. The act of 1797, requiring a guardian to give bonds with *surety*, shows that *before*, surety was not required.

3. *Phelps* acted as a judge. As a judge he acted, in appointing *Stanley*; as a judge, he delivered to him the property; and throughout, he is treated as a judge. If so, no action can be sustained against him, unless he acted *maliciously and corruptly*. But, there is no intention to injure stated in this declaration. It is merely stated, that he *neglected and refused* (perhaps upon good grounds) to take *security*. Nothing, from which malice can be inferred, is stated.

(*e*) *Stat.* 25, 28.                    (*f*) *Stat.* 39.
(*g*) *Stat.* 162.                        (*h*) *Stat.* 383, 421.
(*i*) *Stat.* 24, 167, 227.

An action will not lie against a judge, for an erroneous judgment. Though he mistook, it is sufficient for him, that he acted *judicially.* (*j*)

An action has been sustained against a justice, for refusing the oath to a party robbed. But that is a mere ministerial act; the justice has nothing to do with the complaint, and makes no record of his doings.

In all cases of this kind, where suits have been brought against officers, it seems to have been agreed, that it was necessary to state malice. (*k*)

Every Judge of Probate is to take sufficient security; but this is no more a part of his duty than the appointment of a guardian. And is he to be sued for appointing an improper guardian? In England, the Lord Chancellor may take property into his hands; and if he places it in the hands of a bankrupt, is he liable to the party in damages?

This is analogous to cases, where duties are imposed upon other courts. The County Courts are enjoined to continue a cause, where the defendant is out of the State, and not to issue execution till bonds are lodged; if execution is taken out, and no bonds are entered, are the *Court* liable? Will it be said, that the *clerk* takes the bond? His acts are the acts of the court. If, in that case, it be the act of the clerk, may it not, also, in this case, be the

(*j*) 1 *Mod.* 119, *Bushell's case.* 1 *Mod.* 184, *Hammond* v. *Howell.* 2 *Mod.* 218, *Hammond* v. *Howell.* 2 *Ld. Ray.* 767, *Lunnley* v. *Quaree.* 1 *Salk.* 101. *s. c.* 1 *Com. Dig.* 241.

(*k*) 1 *Term Rep.* 493, *Sutton* v. *Johnson.* *Cowp.* 172, *Mostyn* v. *Fabrigas.* 1 *East* 555, *Hamer* v. *Tappenden.* 15 *Vin. Abr.* 15, 16, 18. 2 *Lev.* 116, *Barnardiston* v. *Some.*

1804.

PHELPS
*v.*
SILL.

1804.

PHELPS
*v.*
SILL.

act of the clerk of Probate? The only difference in the cases is, that in one case, there are five judges, and in the other, but one. A variety of cases before the Superior, County, and City Courts may be put, where the judges must be liable, if the judge, in this case, is liable.

But a judge cannot be responsible to a party injured in damages, unless he acts *corruptly;* a judge of admiralty is frequently required to take bonds ; the governor and council are, in some cases, to take bonds ; and will it be contended, that they are liable, if those bonds are insufficient?

Will it be said, the defendant neglected to call this guardian to account? In this case, no damage had arisen, because they have alleged, that the guardian was, and ever has been, a bankrupt. But were it otherwise, will our judges subscribe to this doctrine, that any persons, affected by the *delay of a court*, in the settlement of an estate, can have an action against the judge? Upon the same principle, the Court of Common Pleas may be made liable to damages, for continuing a case too long.

*Smith*, (of Woodbury) and *Sterling*, for the defendant.

1. It is objected to this action, that the property is not sufficiently described. We admit, that anciently great strictness was required in the description of the property, in actions of trover and trespass, because in those actions, the property may, by the judgment, be vested in the defendant. Besides, in trover, the gist of the action is the conversion, and the value of the property need not be stated. It is, therefore, necessary, that the description of the property be more particular, to give a rule of damages, and that it may be a bar to another action.

And yet, in those cases, greater latitude is now allowed. (*l*) In an action of account, such a particular description is not necessary. In the case cited from *Viner's Abridgment*, the description is as general as ours, and it was holden to be sufficient.

But in the cases read, the gist of the action is property; in this, it is a neglect of duty. Not one of the reasons, which apply to actions of trover, apply to this case. The defendant, in this case, can come prepared to show, that he has not violated his duty; and this judgment will furnish a complete defence to a subsequent action. Besides, if such strictness is required, the infant will often be without any remedy against the judge; for it may be impossible for him to describe the property. The inventory may not specify it; for it may have come from a friend, or the administrator may have changed it.

Further, these records are all in the hands of the defendant; and as to him, at least, the maxim "*id certum est, quod certum reddi potest,*" is applicable.

But whatever might have been the case, upon demurrer, the exception comes now too late. In the cases read, had the value been set forth, judgment would not have been arrested; but there was no rule of damages given. Had the defendant demurred to this declaration, it might have been amended; but after verdict, it is neither reasonable, nor rulable, to arrest the judgment, because the allegations in the declaration are too general. The decisions of this Court have gone very far in aiding even substantial defects; and it has been held,

(*l*) *Esp. Dig.* 587.

S s

1804.

PHELPS
v.
SILL.

that every fact should be presumed, which by any possibility could be supposed to exist. In the case of *Spencer v. Overton*, (*m*) notice, though not stated, was presumed to have been found. And, indeed, it is unreasonable, that the defendant after having led the plaintiff through a course of law, should, at last, be permitted to overturn the whole, by reason of some trifling defect.

2. The defendant, it is said, is a judge. Had he not been a judge, he could not have done us this injury. We never contended, that for a *mere mistake* in judging, the defendant was liable.—We admit, that neither judges, nor jurors, nor arbitrators, nor select men, are liable for a mere error in judgment. The same principle is applicable to all persons performing discretionary duties, as lawyers, administrators, sheriffs, and constables, when they exercise their discretion in a reasonable manner. But, in the present case, we do not complain of the defendant for misjudging.

The taking of bonds is not a judicial act. There may be some *discretion*, to be exercised in this duty, even by a sheriff ; but there can be no difference, whether the bonds are taken by a sheriff, or judge, or justice. No appeal will lie ; and if it were otherwise, in such a case as the present, the right of appeal would be of no use. The guardian would not take the appeal ; and before the infant was of age, the property might all be squandered. Here was a *particular duty* assigned to the judge ; and for refusing to perform it, whether it be called a judicial, or ministerial act, he must be liable. Suppose property had been attached, upon a suit returnable before a justice, and he should refuse to call the case ; would he not

(*m*) *Ante* 183.

be liable ? Suppose a court were to erase a case, or all the cases, from the docket, without a hearing; would they not be liable ? Suppose, in a case, where execution is not to issue without bonds, it should, in a suit against the clerk, be alleged, that he *refused* to take bonds, *knowing the defendant to be a bankrupt;* would not the clerk be liable ? Or, if that should be considered as the act of the Court, suppose he should enter up judgment, contrary to the decision of the Court; would he not then be liable ?

But according to the plain language of this declaration, *corruption* is alleged. It is stated, that the defendant appointed, a *known bankrupt* to be guardian, and *refused* to take *security.* It is objected, that malice is not alleged ; but it is not necessary to allege and prove a particular malice and ill-will towards the infant. He might have acted, with a view to his own emolument, or to accomodate a friend. If a judge should appoint a prisoner from New-Gate guardian, and refuse to take bonds, would not this be corrupt ? Any wrong act, which is done *wittingly* and *wilfully,* is done *corruptly;* for all idea of mistake is thus destroyed.

If malice must be stated, it is only implied malice ; and in looking over this declaration, we see nothing but a heart destitute of social duties. But, in this case, the *quo animo* is no part of the enquiry, as the defendant *refused* to do, what the law expressly enjoined upon him.

Sound policy requires, that a judge, under such circumstances, should be liable ; for if he may thus wilfully violate the law, he can never, on the principles contended for, be called to account. It is important to society, that judges should be supported in the due exercise of their

powers ; but when they *wilfully* exceed them, they ought to be liable.

There is no difference between this case, and that of *Smith* v. *Thrall*, (*n*) decided in this Court, except that this is a stronger case, as that was on demurrer. Besides, the defendant, in that case, did not refuse to take bonds, but did in fact take bonds ; nor was there a fact stated to show, that he acted corruptly. The law makes it the duty of the justice to take bonds on a writ of replevin, and the duty of the Judge of Probate, on the appointment of a guardian. They are both judicial, or both ministerial acts. It is of the utmost consequence, that we should have an uniformity of decisions ; it is important to courts, important to counsel, and important to the people at large. And we trust, that that case will be regarded as an authority in this Court.

*Ingersoll*, in reply.

1. No authority can be shewn, to prove, that more certainty is requisite in actions of trover and trespass, than in the present ; and the reasons in those cases apply to every case. In the present case, the defendant might, perhaps, have proved, that part of the property was not squandered, had it been properly described. And it is important to him, that it be described, that he may plead it in bar to another action. And in those cases, as well as this, it is to be noticed, that the exceptions were taken after verdict.

But, it is said, that the loss of property is not the gist of the action. It will not, however, be pretended,

(*n*) 1 *Root* 165.

that the loss of property is unimportant; for if the defendant in error has lost nothing, by the want of bonds, the suit will not lie. In *Smith* v. *Thrall*, if the defendant had received all his money, the action would not have lain. This declaration, therefore, is bad, for being too general.

2. If the appointment of the guardian was a mere ministerial act, there is not enough alleged, to support an action. No recovery can be had, unless there was corruption.

That *Phelps* acted as judge, is admitted. The statute constituting courts (*o*) will show, that their powers are judicial; for it is absurd to say, that a court shall consist of ministerial officers. A clerk to record ministerial acts would be absurd.

Are not the probate of wills, the granting of administration, &c. judicial acts? Is, then, the taking of bonds, accompanying those acts, ministerial?

It is said, an appeal cannot be taken. But the power of the judge is so limited, that there is no need of an appeal. If, however, there is a question, whether the infant is not of age to elect for himself, and the judge refuses to appoint the person he elects, undoubtedly an appeal may be taken.

If, then, he acted as judge, no action will lie, even though he acted corruptly. It may, indeed, be a hard case; but the judge is amenable to the public only, and not to individuals. Upon the principle contended for,

(*o*) *Stat.* 131.

no judge would be exempt; suits might be brought against the judges of the highest court. The legislature will, indeed, lend a ready ear to complaints against such officers; but their office must always protect them in suits brought by individuals. The County Court are to take bonds of taverners; but are they liable if they do not? No; it is done, by the Court, as part of the business of the Court. So this bond was taken, not by *Noah Phelps*, but by the *Court of Probate*.

It is agreed, that the defendant was not liable for misjudging. But, it is said, the declaration states enough to show, that he acted maliciously. But malice can never be *inferred*, by a court. In slander, malice and falsehood must be stated; and here, corruption must be averred. The jury may infer it, from the facts proved; but the court can never make that inference.

The declaration, indeed, states, that the plaintiff had so much property, and the judge knew it, and appointed *Stanley* guardian, who was a known bankrupt; but there is no averment, that *Stanley* was not an *honest man*. No corruption, therefore, could be inferred, even were it the duty of the court to make the inference.

What is *sufficient* security, is a mere question of construction. The judge might well say, if the intended guardian was responsible, " I may take his own bond," or, if he was a bankrupt, " I know him to be honest, and capa-
" ble of doing the business; the law gives me a discretion,
" with respect to the sufficiency of the security; I would
" trust him with my own property; I may, therefore,
" trust him with that of others." Can the court, then, infer malice in the judge?

But, it is said, in this case, *no* security was taken. If I had a debt against a bankrupt, and should say, I had no security, this would not exclude the idea of my having his note. In this case, therefore, though it is averred, that *no security* was taken, it does not follow, that the bonds of the guardian were not taken.

The case has been put of a judge's refusing to appoint a guardian, or try a cause. To this it may be answered, that he may be impeached, or displaced ; but cannot be subjected to damages, in a private suit.

If, then, this case stood upon a demurrer, there could be no doubt. But, it is said, that by the decisions of this Court, the defect cannot be taken advantage of after verdict. In the case referred to, the Court went upon the idea, that the plaintiffs, having grounded their action upon a promise in law, to support which notice was necessary, and the jury having found the promise, must necessarily have found the fact of notice. The rule is, that what is defectively set forth is cured by verdict ; but here malice is not stated at all : the malice must be found, whether the act was ministerial, or judicial. Were all the facts stated in a special verdict, the Court could no more infer malice, than they could infer a conversion, in an action of trover, if a special verdict, stating a demand and refusal, had been found.

In *Smith* v. *Thrall*, the justice did not act as a judge, nor did he do a judicial act ; he made no record, and had no clerk. There, the Court went further than English authorities will warrant ; but, from the report, of that case, it does not appear, that the Court took into consideration the question, whether the defendant acted as a judge.

1804.

PHELPS
v.
SILL.

The judgment was reversed.

BY THE COURT. In the opinion of this Court, the declaration is insufficient. It is uncertain ; and the facts therein stated furnish no ground of action against the defendant.

1. The declaration is uncertain. The averment is, that the plaintiff possessed personal estate of the value of two thousand dollars. It is, in this particular, altogether general, without specifying the personal estate intended. A more particular description of the estate is essential, as means of information to the defendant, for his defence. To a claim so loose, he cannot be presumed to be able to answer. It also is essential to a recovery, and for a rule of damages. That the plaintiff was possessed of personal estate, and had lost it by means of the defendant's conduct, is the gist of the action. He must, then, identify the species of estate, which he claims to have owned. The rule, in this respect, is, that the declaration must be certain ; and although the minuteness formerly insisted on is not now required, yet no case is found, in analogous actions, where a declaration so loose as the present, in respect to the estate made the foundation of the claim, has been supported, either before, or after, verdict. But many occur, where the declarations were less general, which have, notwithstanding, been dismissed, on the ground of their being too general, both on demurrer, and after verdict.

2. The facts stated furnish no cause of action against the defendant. The facts respect the defendant's conduct as Judge of Probate ; as such, he is charged with appointing a bankrupt guardian ; and with neglecting and refusing to take security from the guardian, as by

law is required ; and with not calling the guardian to account for the plaintiff's estate, no impurity of motive is imputed to him, and none is to be inferred.

By these charges the defendant is no otherwise implicated, than for error of judgment, in doing an act, or in neglecting and refusing to do a particular official act, in the exercise of judicial power ; and it is a settled principle, that for those a judge is not to be questioned in a civil suit. A regard to this maxim is essential to the administration of justice. If by any mistake in the exercise of his office, a judge should injure an individual, hard would be his condition, if he were to be responsible therefore in damages. The rules and principles, which govern in the exercise of judicial power, are not, in all cases, obvious ; they are often complex, and appear under different aspects to different persons. No man would accept the office of judge, if his estate were to answer for every error in judgment, or if his time and property were to be wasted in litigations with every man, whom his decisions might offend. It is, therefore, a settled principle, that however erroneous his judgment may be, either by positive acts, neglect, or refusal to do certain acts, or however injurious to a suitors, a judge is never liable, in any civil action, for damages arising from his mistake.