Bader *v.* State—176 Ind. 268.

## BADER *v.* THE STATE OF INDIANA.

[No. 21,654.    Filed April 28, 1911.    Rehearing denied June 29, 1911.]

1. FALSE PRETENSES.—*Excessive Claims Against Counties.—Statutes.*—Section 2586 Burns 1908, Acts 1905 p. 584, §675, providing that "whoever, knowing the same to be false or fraudulent, makes out or presents for payment or certifies as correct to * * * the county auditor or the board of commissioners * * * any claim, * * * false or fraudulent, for the purpose of procuring the allowance of the same or an order for the payment thereof," shall, on conviction, be imprisoned, etc., includes excessive claims as well as claims wholly false.    p. 271.

2. INDICTMENT.—*Knowledge.*—Where the statute makes knowledge an ingredient of a crime, it must be charged in the indictment. p. 271.

3. FALSE PRETENSES.—*Knowledge.—Indictment.*—An indictment charging that defendant "unlawfully, feloniously and knowingly made out and filed * * * a certain false and fraudulent claim," and that the Winamac Bridge Company, of which he was the general manager, had "no just or lawful demand therefor against the county as he then and there well knew," sufficiently charges that defendant knew of its falsity.    p. 272.

4. FALSE PRETENSES.—*Fraudulent Claims Against County.—Indictment.—Copies.—Quotation Marks.*—An indictment for the filing of a false claim against a county, charging that defendant filed a claim "of the tenor following," and setting out a copy thereof except the verification, but which copy is not enclosed within quotation marks, sufficiently sets out the claim upon which the prosecution was founded; and mere omission of quotation marks or mistakes in grammar, spelling or punctuation will not vitiate an indictment or affidavit.    p. 273.

5. CRIMINAL LAW.—*Insubstantial Errors.—Defective Indictment.—Appeal.*—Insubstantial defects in an indictment, of such character as not to harm defendant, are not grounds for a reversal. p. 273.

6. FALSE PRETENSES.—*Names.—Evidence.*—Under an indictment charging defendant, who was general manager of the Winamac Bridge Company, with filing a false claim against a certain county, a claim verified by the "Winamac Bridge Company, by C. L. B.," is admissible, where it is the claim set out in the indictment and which was verified and filed by defendant.    p. 273.

7. CRIMINAL LAW.—*Indictment.—Wrong Name.—How Questioned.*—After a defendant has pleaded not guilty and has entered upon the trial, it is too late to raise the objection that he is being prosecuted under a wrong name.    p. 274.

Bader *v.* State—176 Ind. 268.

8. FALSE PRETENSES.—*Presenting False Claims.—"Verification."—Indictment.*—The verification of a claim does not constitute a part of the claim proper; and an indictment for presenting a false claim need not set out such verification. p. 274.

9. FALSE PRETENSES.— *Presenting False Claims.— Evidence.— Bridge Contracts.*—In a prosecution for the filing of a false claim for the building of a bridge, the commissioners' record, showing the filing of a petition for the construction of such bridge, the bids and the contract are admissible in evidence; and the specifications and the blue print are also admissible where they are part of the contract. p. 276.

10. FALSE PRETENSES.—*Presenting False Claims.—Bridges.—Expert Evidence.*—In a prosecution for presenting a false claim against a county for the construction of a bridge, testimony by an expert engineer as to the weight of the bridge and as to the particulars in which the contractor failed to comply with the contract, is admissible. p. 277.

11. FALSE PRETENSES.—*Presenting False Claims.—Bridges.—Consideration of Cost of.—Jury.*—In a prosecution for presenting to a county a false claim for the construction of a bridge, the jury may consider the value of the material left out of the bridge, and the difference in cost of the bridge as constructed and as contracted for, but the value of the bridge as constructed is irrelevant. p. 278.

12. FALSE PRETENSES.—*Presenting False Claims.—Powers of Boards of Commissioners.—Instructions.*—In a prosecution for presenting to a county a false claim for the construction of a bridge, instructions that the board of commissioners has no power to vary such contracts except when in session are not prejudicial, where there was some evidence that defendant had spoken to members of the board in respect to certain modifications of the contract. p. 278.

13. TRIAL.—*Instructions.—Presumptions.—Argument to Jury.*—Where the record fails to disclose what argument or statements were made to the jury by attorneys for defendant, instructions, correct in themselves, are presumed to have been justified by such statements and argument. p. 279.

14. CRIMINAL LAW.—*Previous Good Reputation.—Mitigation.—Instructions.*—In a prosecution for presenting to a county a false claim, an instruction that if the jury should believe the defendant guilty "his previous good character neither justifies, mitigates nor excuses the offense," is not prejudicial to defendant, the jury having no power to fix his punishment. p. 279.

15. CRIMINAL LAW.—*Presenting False Claims.—Instructions.—Notice.—"Should."*—An instruction enumerating the elements necessary to a conviction for presenting a false claim is not errone-

ous on the ground of omitting defendant's knowledge of the falsity thereof, and of the use of "should" instead of "might" in describing its duty in respect to finding defendant guilty, where such instruction, in fact, did include the element of knowledge, the use of "should" being proper.  p. 280.

16. CRIMINAL LAW.—*Instructions.—Signing.—Refusal.*—Where defendant's requested instructions were not signed by him nor by his counsel (Acts 1909 p. 257) no available error was committed in refusing them.  p. 280.

17. CRIMINAL LAW.—*Instructions.—Duplication.*—It is not erroneous to refuse to duplicate instructions.  p. 281.

18. APPEAL.—*Briefs.—Points.—Waiver.*—Alleged errors not contained in appellant's statement of points cannot be raised at any time afterwards.  p. 281.

From Jasper Circuit Court; *Charles W. Hanley,* Judge.

Prosecution by The State of Indiana against Charles Bader. From a judgment of conviction, defendant appeals. *Affirmed.*

*George A. Williams, H. A. Steis, B. D. Glazebrook* and *M. M. Hathaway,* for appellant.

*James Bingham,* Attorney-General, *Fred Longwell,* Prosecuting Attorney, *A. G. Cavins, Edward M. White* and *William H. Thompson,* for the State.

MONKS, J.—Appellant, the secretary-treasurer and general manager of the Winamac Bridge Company, was prosecuted for making out and filing with the auditor of Jasper county, and causing to be presented to the commissioners of said county for allowance, an alleged false and fraudulent claim, in violation of §2586 Burns 1908, Acts 1905, p. 584, §675. That part of said act applicable to this case is as follows: "Whoever, knowing the same to be false or fraudulent, makes out or presents for payment or certifies as correct to * * * the county auditor, or the board of commissioners or other officer of any county, * * * any claim, bill, note, bond, account, pay roll or other evidence of indebtedness, false or fraudulent, for the purpose of procuring the allowance of the same or an order for the payment

thereof, out of the treasury of said * * * county * * * shall, on conviction," be imprisoned, etc.

Appellant contends that said §2586 does not cover a fraudulent claim arising from a valid contract, as in this case, but only applies "where the basis of the claim was with-

1. out any fact or transaction to support it." This point was before this court and was decided adversely to the contention of appellant in the case of *Brunaugh* v. *State* (1910), 173 Ind. 483, 496, where the court said: "The indictment shows that the claim as presented stated that a certain amount of work was performed, but that in fact the amount of work actually done by the company was very much less than that stated in the claim presented, and that the claim was for more money than was actually due upon the work which the company had done during the month of April, 1907. These facts, * * * show that the claim, when presented, was a false one within the meaning of the statute in question."

In the case of *United States* v. *Shapleigh* (1893), 54 Fed. 126, 128, 136, 4 C. C. A. 237, the court quoted from an instruction of the trial court, as follows: "A claim against the government is a 'false' one, within the meaning of the statute, if it is an untrue claim; for example, if a claim is made for labor or supplies said to have been furnished to the government, and the claim is made for more services than have been actually rendered, or for more supplies than have been furnished, such a claim is a false one within the meaning of the statute."

Appellant further contends that the affidavit is not sufficient, because it does not allege that he knew the claim in question was false or fraudulent. It is a general rule,

2. as counsel contend, that in cases where the statute expressly makes knowledge of the fact that the claim is false or fraudulent a necessary element of the offense, it must be alleged. 22 Cyc. 327; *Powers* v. *State* (1882), 87 Ind. 97; *State* v. *Williams* (1894), 139 Ind. 43, 47 Am. St.

255; 10 Ency. Pl. and Pr. 495. But the affidavit in this case does allege knowledge, and is in this respect sufficient.

It alleges that appellant "unlawfully, feloniously and knowingly made out and filed   *   *   *   a certain false and fraudulent claim," etc. This is the usual form of alleging knowledge. See Gillett, Crim. Law (2d ed.) §300; Moores & Elliott, Indiana Crim. Law §1235. See, also, *Ferris* v. *State* (1901), 156 Ind. 224, 225-227.

In the case of *State* v. *Williams, supra,* the same question was presented to the court and carefully considered. In that case the allegation that the defendant "did then and there unlawfully, falsely, fraudulently and knowingly utter, publish and pass   *   *   *   as true and genuine a certain false, forged and counterfeit promissory note," was held to be a sufficient allegation that the defendant knew the note was false, forged and counterfeit. See authorities given in the case just cited. See, also, 22 Cyc. 328; 12 Am. and Eng. Ency. Law 522; *United States* v. *Clark* (1888), 37 Fed. 106; *United States* v. *Nathan* (1894), 61 Fed. 936; *Rosen* v. *United States* (1896), 161 U. S. 29, 31, 32, 16 Sup. Ct. 434, 40 L. Ed. 606; *Price* v. *United States* (1897), 165 U. S. 308, 17 Sup. Ct. 366, 41 L. Ed. 727.

But even if we test the affidavit in this case by the strict rule claimed by appellant, it is good, for later in the affidavit it is charged that the Winamac Bridge Company had "no just or lawful demand therefor against said county as he then and there well knew." This could mean nothing if it does not mean that appellant presented a claim with the knowledge, at the time he presented it, that it was false and fraudulent.

The next contention of appellant is that the affidavit is bad for uncertainty, in that it does not give either the substance or the exact copy of the claim referred to.

Appellant concedes that the affidavit might describe the claim upon which the prosecution is based, either by setting out its substance or by setting out an exact copy. He in-

sists, however, that by using the words, "of the tenor
4. following," the affidavit undertakes to set out an ex-
act copy of the claim. This is what the affidavit does,
and the claim, as alleged, was given in evidence. The point
made by appellant, that the quotation marks are necessary in
the affidavit to inform him of where the claim ends, and that
because they are omitted it is too uncertain, is not well taken.
It is well settled that where the meaning is clear, a mere mis-
take in grammar, spelling or punctuation does not vitiate an
indictment or affidavit. Gillett, Crim. Law (2d ed.) §125;
22 Cyc. 292; State v. Hedge (1855), 6 Ind. 330; Ward v.
State (1873), 50 Ala. 120; Fuller v. State (1897), 117 Ala.
200, 23 South. 73; Peacock v. State (1910), 174 Ind. 185;
Commonwealth v. Wright (1848), 1 Cush. (Mass.) 46, 64, 65.
The exact beginning and end of the claim as set out in the
affidavit are clear, and appellant could not have been misled
nor injured by the omission of the quotation marks.

It is well settled that minor defects in an affidavit, of such
a nature that the accused has not been harmed by them, are
not cause for reversal in this court. §2063, subd. 10,
5. Burns 1908, Acts 1905 p. 584, §192; Billings v. State
(1886), 107 Ind. 54, 57, 58, 57 Am. Rep. 77; Jay v.
State (1879), 69 Ind. 158; Musgrave v. State (1893), 133
Ind. 297; Rivers v. State (1896), 144 Ind. 16; Drake v. State
(1896), 145 Ind. 210; Selby v. State (1904), 161 Ind. 667;
Fisher v. State (1891), 2 Ind. App. 365; Agar v. State,
(1911), ante, 234. It is evident that said objections made to
the affidavit are not tenable.

Appellant contends that the court erred in admitting in
evidence a claim verified by the "Winamac Bridge Company,
by C. L. B." The claim is identical with that set out
6. in the affidavit, and the evidence shows, without con-
flict, that the claim introduced was made out and
sworn to by appellant, and by him mailed to the auditor of

Jasper county. *Agar* v. *State, supra.* The fact that the pro-
ceedings were had against appellant under a wrong
7.   name cannot avail him, when he has pleaded not
guilty, and entered upon the trial of the case without
making objection thereto.   §2050 Burns 1908, Acts 1905
p. 584, §179; Gillett, Crim. Law (2d ed.) §§127, 764; *Uter-
burgh* v. *State* (1846), 8 Blackf. 202; *State* v. *Brunell*
(1872), 29 Wis. 435, 438, 439; *Commonwealth* v. *Fredericks*
(1875), 119 Mass. 199, 204; *Gabe* v. *State* (1845), 6 Ark. 519,
523; *Davids* v. *People* (1901), 192 Ill. 176, 185, 61 N. E. 537;
*Washington* v. *State* (1880), 68 Ala. 85.  See, also, *Agar* v.
*State, supra.*

The only other theory under which appellant can say that
this is not the claim set out in the affidavit, is that the verifi-
cation is a part of the claim, and that as the State
8.   has not set out the verification as a part of the claim
it cannot be introduced in evidence.

In 1 Bouvier's Law Dict. (15th ed.) 320, a claim is defined
as "the assertion of a liability to the party making it to do
some service or pay a sum of money." A verification is de-
fined by the same author as "the certificate that the writing
is true." 2 Bouvier's Law Dict. (15th ed.) 781.

Black's Law Dict. (2d ed.) 205 says: "A claim is a
right or title, actual or supposed, to a debt, privilege, or other
thing in the possession of another." Verification is defined
as a "confirmation of the correctness, truth, or authenticity
of a pleading, account, or other paper, by an affidavit, oath,
or deposition," Black's Law Dict. (2d ed.) 1203.

In 8 Words and Phrases 7296 it is said: "The term 'veri-
fied,' as applied to pleadings and statements of claims filed
with municipal officers, has a settled meaning, and refers to
an affidavit attached to such a statement of claim, as to the
truth of the matters therein set forth."

In the case of *Patterson* v. *City of Brooklyn* (1896), 6
App. Div. 127, 128, 40 N. Y. Supp. 581, the action related to
a claim filed with the controller of the city of Brooklyn,

which claim, under the law, was required to be verified. The court said: "The term 'verified,' as applied to pleadings and statements of this character, has a settled meaning in our statutory law, and it refers to an affidavit attached to the statement as to the truth of the matters therein set forth."

In the case of *Stale* v. *Trook* (1909), 172 Ind. 558, 560, the word "verify" is defined as follows: "The primary definition of the verb 'verify,' when used in matters of law, as given in the Standard Dictionary is: 'To affirm under oath; confirm by formal oath; as, to verify pleadings in an action; to verify accounts, etc.' "

The language of our statute providing for the filing and allowing of claims against counties (§§6002, 6008 Burns 1908, §5758 R. S. 1881, Acts 1897 p. 187, §4) would imply that the claim and the verification are separate instruments.

It has been held that the certificate of acknowledgment attached to a deed or a mortgage forms no part thereof, but is a separate instrument (*Sturgeon* v. *Board, etc.* [1879], 65 Ind. 302; *Stale* v. *Dufour* [1878], 63 Ind. 567) ; that an indorsement is no part of a check or note, and need not be set out in the indictment or information for uttering a forged or counterfeit check or note, and that there is no variance between the indictment and the evidence, if an indorsed check or note is given in evidence (*Miller* v. *People* [1873], 52 N. Y. 304, 11 Am. Rep. 706; *Hess* v. *State* [1831], 5 Ohio *5, 23 Am. Dec. 767; *Perkins* v. *Commonwealth* [1851], 7 Gratt. 651, 56 Am. Dec. 123). It is also held in relation to pleadings required by law to be verified, that the verification is not a part of the pleading, and that such a pleading unverified is good as against a demurrer. *Vail* v. *Rinehart* (1886), 105 Ind. 6, 11; *Toledo Agricultural Works* v. *Work* (1880), 70 Ind. 253, 255; *M'Cormick* v. *Maxwell* (1836), 4 Blackf. 168; *Hagar* v. *Mounts* (1832), 3 Blackf. 57; *Hagar* v. *Mounts* (1833), 3 Blackf. 261.

We hold, therefore, that the verification is not a part of

the claim, but a separate and distinct instrument appended thereto. It follows that the claim was properly admitted in evidence, as matters which do not form a part of an instrument need not be set out in the indictment or affidavit, and their presence on the instrument does not constitute a variance when the instrument is offered in evidence. 22 Cyc. 355; *Commonwealth* v. *Harmon* (1854), 2 Gray (Mass.) 289; *Commonwealth* v. *Taylor* (1850), 5 Cush. (Mass.) 605; *Langdale* v. *People* (1881), 100 Ill. 263; *Hess* v. *State, supra; Perkins* v. *Commonwealth, supra; Miller* v. *People, supra.*

It is further contended that the trial court erred in allowing the State to introduce in evidence the commissioners' record, showing the filing of a petition for the bridge, 9. the bids and the contract entered into between the board of commissioners and the Winamac Bridge Company for the construction of the bridge for which said claim was filed. The transaction relating to the letting of the contract and the contract were relevant to the issues in this case. The record offered is one which it was the duty of the auditor of said county to keep. §9458 Burns 1908, §5895 R. S. 1881. It follows that the court did not err in allowing the record to be introduced in evidence. "Whenever there is a duty to record official doings, the record thus kept is admissible." 3 Wigmore, Evidence p. 1993, and see *State, ex rel.,* v. *Sutton* (1885), 99 Ind. 300, 304, 305; *Burns* v. *Harris* (1879), 66 Ind. 536, 540; *Wells* v. *Board, etc.* (1864), 22 Ind. 241; *Kyburg* v. *Perkins* (1856), 6 Cal. 674, 675; *Ferguson* v. *Clifford* (1858), 37 N. H. 86, 95; *Hempton* v. *State* (1901), 111 Wis. 127, 133, 86 N. W. 596; *Evanston* v. *Gunn* (1878), 99 U. S. 660, 665-667, 25 L. Ed. 306.

As there was evidence that the specifications and the blue print were a part of the contract, they were properly admitted in evidence.

It is next contended by appellant that it was error to allow witness Wallace Marshall to answer the following question:

"State what you actually found in the bridge, and 10. how it differed, if any, from the plans and specifications." In response to this question witness gave in detail the weights of the various parts of the bridge as called for in the plans and specifications, the weights as constructed, and the difference in weight between the two. Said evidence was to the effect that the weight of the metal in the bridge as constructed was 13,885 pounds less than it would have been if constructed according to the contract; that the weight of the metal in the bridge constructed was thirty-five per cent less than the metal in the bridge contracted for; that the fair market value of said 13,885 pounds of metal, manufactured in the design for bridge construction at the time this bridge was constructed, was $312; that it would have cost $100 more to erect the superstructure of the bridge according to the contract than it did as it was constructed; that the strength of the bridge constructed was one-half what it would have been if constructed according to the contract.

Appellant insists that this testimony was a mere conclusion, but he cites no authorities to sustain this contention. The witness was an expert engineer, and it was proper to permit him to give his opinion, or the result of his calculations, on facts involving special skill in his profession, from which the jury unaided could not be supposed to draw proper conclusions. 17 Cyc. 67; *Moelering* v. *Smith* (1893), 7 Ind. App. 451, 456.

In the cast last cited, an engineer was permitted to testify to the amount of stone in a wall, basing his calculations upon the dimensions given by another engineer. In discussing the propriety of admitting said testimony the court said: "If the jury were competent to make the calculations, the figures of Shea and Fowler [the engineers] could do no harm, for the jury could verify them and decide for itself as to their correctness. * * * The calculations would involve considerable time, labor and the exercise of some skill in the rules of mensuration, and it was not improper to permit

these engineers and mechanics to give in evidence the result of their estimate.''

It is evident, upon the rule laid down in the case just cited, that it was proper for the witness in this case to testify as to the weight of the material called for by the specifications and the weight of the material used. If it is error to allow him to make the subtractions, the error would be harmless, as the jury could easily verify this part of the calculation.

It was proper for the jury, in determining the issues in the case, to consider the value of the material left out of the bridge, and also the difference in the cost of con-

11. structing the bridge as it was and what it would have been if constructed according to the contract.

The value of the bridge as constructed was not relevant to the issues in the case, and evidence offered by appellant to show said value was properly excluded, for the reason that even if the bridge as constructed was worth the contract price or more, that would not be a defense.

Appellant complains of instructions seven and eight, given by the court, in regard to the powers and duties of boards of commissioners in letting contracts for the con-

12. struction of bridges, to the effect that the board had no power to vary such contract except when in session.

Appellant concedes their correctness as abstract propositions of law, but insists that they were not applicable to the issues in the cause. The alleged false claim was made out and presented for a balance of $300 claimed to be due the Winamac Bridge Company on a seventy-foot steel bridge constructed by it under a contract in writing between said bridge company and the Board of Commissioners of the County of Jasper. There was evidence given on behalf of appellant tending to prove conversations between appellant and some of the members of the board in regard to the inability of appellant to procure the material, necessary to con-

struct the bridge according to the contract, and to complete it at the time fixed in the contract; and appellant testified that he said to said commissioners that the company could build the bridge within the time fixed out of material on hand, with some variation from the contract. Under this state of the evidence the court. did not err in giving said instructions.

Moreover, as it is not disclosed by the record what argument or statements counsel for appellant made to the jury in regard to said evidence, we are bound to indulge all reasonable presumptions in favor of the action of the trial court, and must presume that counsel for appellant made such argument as justified the giving of said instructions seven and eight. *Reid* v. *State* (1895), 141 Ind. 116, 122, 123.

Instruction six, given by the court, informed the jury that if it believed from the evidence that appellant was guilty, "his previous good character neither justifies, mitigates nor excuses the offense." Appellant insists that the instruction is erroneous in stating that previous good character does not mitigate the offense, and cites *Voght* v. *State* (1896), 145 Ind. 12, 17, which he claims holds that previous good character of a defendant "is competent in mitigation of his punishment." Neither the case cited, nor any of the cases cited therein, holds that such evidence will mitigate the punishment of a defendant.

Said cases hold that an instruction is not erroneous which informs the jury that if it is satisfied beyond a reasonable doubt of a defendant's guilt, "then his previous good character would not avail him as a defense or entitle him to an acquittal."

This is substantially the same as the instruction complained of in this case. Even if previous good character might avail in mitigating a defendant's punishment—a question we need not and do not decide—the instruction com-

plained of was not erroneous, for the reason that it had reference alone to the question of his being guilty of the offense charged, and not to his punishment.

Moreover, under the law in force at the time of the trial, the jury was not authorized to assess any punishment, but only to find by the verdict whether appellant was guilty or innocent. Under such circumstances, even if the word "mitigates" in said instruction was erroneous, it was harmless.

Appellant complains of instruction nine, given by the court, for the reason that it "undertook to state all the elements necessary to a conviction, and concluded by telling the jury that if it found all the facts enumerated" it should find the defendant guilty.

The objections to the instruction are that it omitted the element of knowledge on the part of appellant that the claim was false and fraudulent, and that the court erroneously used the word "should" instead of "might."

Said instruction makes appellant's knowledge of the falsity of the claim, and that the claim was filed for the purpose of defrauding Jasper county, essential elements of the offense, and it is not therefore open to the first objection urged. The use of the word "should" was not erroneous. *Walker* v. *State* (1894), 136 Ind. 663, 670, 671; *Deal* v. *State* (1895), 140 Ind. 354, 364, 368-370; *Southern R. Co.* v. *State* (1905), 165 Ind. 613, 622, 623, and cases cited; *Fifer* v. *Ritter* (1902), 159 Ind. 8, 11, 12; *Strebin* v. *Lavengood* (1904), 163 Ind. 478, 493, 494.

As the instructions requested by appellant do not appear to have been signed by him or his counsel, as required by Acts 1909 p. 257, there was no available error committed in refusing to give them. *Glover* v. *State* (1887), 109 Ind. 391, 403, and cases cited; *Collett* v. *State* (1901), 156 Ind. 64; *Musser* v. *State* (1901), 157 Ind. 423, 445, 446; *Starr* v. *State* (1903), 160 Ind. 661, 668, and cases cited; *Eacock* v. *State* (1907), 169 Ind. 488, 506, 507.

See, also, *Pittsburgh, etc., R. Co.* v. *O'Conner* (1909), 171 Ind. 686, 699, and cases cited. *Board, etc.,* v. *Legg* (1887), 110 Ind. 479, 486; *Stott* v. *Smith* (1880), 70 Ind. 298, 303, and cases cited; *Chicago, etc., R. Co.* v. *Hedges* (1886), 105 Ind. 398, 403; *Craig* v. *Frazier* (1891), 127 Ind. 286, 288; *Mace* v. *Clark* (1908), 42 Ind. App. 506, and cases cited; *State Nat. Bank* v. *Bennett* (1894), 8 Ind. App. 679, 684, and cases cited; *Lake Erie, etc., R. Co.* v. *Close* (1892), 5 Ind. App. 444, 449, 450.

We have examined the instructions requested by appellant, and refused, and find that so far as they correctly expressed the law they were substantially embraced in those given by the court. Such being the case, appellant would have no ground for complaint even if the instructions requested had been signed, as required by the statutes. *Musser* v. *State, supra,* and cases cited.

Under the fifth clause of rule twenty-two, no alleged error or point not contained in appellant's statement of points can be raised afterwards, either by reply brief, or in oral or printed argument, or on petition for rehearing. *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1907), 168 Ind. 438, 467; *Kelley* v. *Bell* (1909), 172 Ind. 590, 599.

Having determined all the questions presented by the statement of points, and not waived, and finding no available error, the judgment is affirmed.