**INDIANA CIVIL RIGHTS COMMISSION, Appellant (Defendant Below),**

v.

**CITY OF MUNCIE, Muncie Police Pension Board, Cordell Campbell, Jack E. Turner, Donald R. Scroggins, Larry McCaffrey, Muncie City Police Department and Harold B. Duke, Appellees (Plaintiffs Below).**

No. 2–1082A350.

Court of Appeals of Indiana, Third District.

Feb. 8, 1984.

Rehearing Denied March 15, 1984.

Transfer Denied May 18, 1984.

⚖65

Linley E. Pearson, Atty. Gen., Frederick S. Bremer, Deputy Atty. Gen., Indianapolis, for appellant.

Thomas L. DeWeese, Asst. City Atty., Muncie, for appellees.

HOFFMAN, Judge.

Milton Smith, a black, was employed by the City of Muncie as a special police officer. In seeking to secure a permanent position as a regular police officer, Smith was required to apply for membership in the Muncie Police Pension Fund. On September 4, 1973, the Pension Board denied Smith's application for admission. The Indiana Civil Rights Commission (ICRC) made a determination that Smith had been discriminated against based on race, and the Pension Board appealed to the Delaware Superior Court. The trial court reversed and entered findings of no discrimination. ICRC now appeals that decision.

■ ICRC argues *inter alia* that the Delaware Superior Court was without jurisdiction to review its determination for failure to meet the specific requirements of IND.CODE § 4–22–1–14. This provision states in part that:

"4–22–1–14 Petition for review

Sec. 14. Any party or person aggrieved by an order or determination made by any such agency shall be entitled to a judicial review thereof in accordance with the provisions of this act. Such review may be had by filing with the circuit or superior court of the county in which such person resides, or in any county in which such order or determination is to be carried out or enforced, a verified petition setting out such order, decision or determination so made by said agency, and alleging specifically wherein said order, decision or determination is:

(1) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; or

(2) Contrary to constitutional right, power, privilege or immunity; or

(3) In excess of statutory jurisdiction, authority or limitations, or short of statutory right; or

(4) Without observance of procedure required by law; or

(5) Unsupported by substantial evidence.

"Said petition for review shall be filed within fifteen (15) days after receipt of

notice that such order, decision or determination is made by any such agency. Notice shall be given in the manner prescribed by section 6 of this act. Unless a proceeding for review is commenced by so filing such petition within fifteen (15) days any and all rights of judicial review and all rights of recourse to the courts shall terminate."

In judicial review of an administrative determination, compliance with the requirements of this section is a condition precedent to jurisdiction. *Personnel Board v. Parkman,* (1969) 252 Ind. 44, 245 N.E.2d 153; *White v. Bd. of Med. Regis. and Exam.* (1956) 235 Ind. 572, 134 N.E.2d 556; *Ind. Civil Rights Comm. v. Int'l. Union,* (1979) 179 Ind.App. 407, 385 N.E.2d 1176; *Gleason v. Real Estate Comm.,* (1973) 157 Ind.App. 344, 300 N.E.2d 116.

■ ICRC now attacks the jurisdiction of the Delaware Superior Court on several different grounds. First, ICRC alleges that the Pension Board's petition for review to the superior court and petition to introduce newly discovered evidence to ICRC were not properly verified under Ind. Rules of Procedure, Trial Rule 11(B). This rule provides as follows:

"(B) Verification by affirmation or representation. When in connection with any civil or special statutory proceeding it is required that any pleading, motion, petition, supporting affidavit, or other document of any kind, be verified, or that an oath be taken, it shall be sufficient if the subscriber simply affirms the truth of the matter to be verified by an affirmation or representation in substantially the following langauge:

'I (we) affirm, under the penalties for perjury, that the foregoing representation(s) is (are) true.

(Signed) _____'

Any person who falsifies an affirmation or representation of fact shall be subject to the same penalties as are prescribed by law for the making of a false affidavit."

The Supreme Court of Indiana has held that " '[v]erification ... includes both the actual swearing to the truth of the statements by the subscriber and also the certification thereto by the notary or other officer authorized by law to administer oaths.' " *State ex rel. Hodges v. Kosciusko Circuit,* (1980) Ind., 402 N.E.2d 1231, at 1233; *Gossard v. Vawter,* (1939) 215 Ind. 581, at 584–586, 21 N.E.2d 416, at 417.

In *Bader v. State,* (1911) 176 Ind. 268, at 274, 94 N.E. 1009, 1011–1012, the Supreme Court defined verification as:

" 'the certificate that the writing is true.' 2 Bouvier's Law Dict. (15th ed.) 781. "Black's Law Dict. (2d ed.) 205 says: ... Verification is defined as a 'confirmation of the correctness, truth, or authenticity of a pleading, account or other paper, by an affidavit, oath, or deposition.' Black's Law Dict. (2d ed.) 1203.

" 'In 8 Words and Phrases 7296 it is said: "The term 'verified,' as applied to pleadings and statements of claims filed with municipal officers, has a settled meaning, and refers to an affidavit attached to such a statement of claim, as to the truth of the matter set forth." '

"In the case of *Patterson v. City of Brooklyn* (1896), 6 App.Div. 127, 128, 40 N.Y.S. 581, the action related to a claim filed with the controller of the city of Brooklyn, which claim, under the law, was required to be verified. The court said: 'The term "verified," as applied to pleadings and statements of this character, has a settled meaning in our statutory law, and it refers to an affidavit attached to the statement as to the truth of the matters therein set forth.'

"In the case of *State v. Trook* (1909), 172 Ind. 558, 560, [88 N.E. 930, 931], the word 'verify' is defined as follows: 'The primary definition of the verb "verify," when used in matters of law, as given in the Standard Dictionary, is: "To affirm under oath; confirm by formal oath; as, to verify pleadings in an action; to verify accounts, etc." ' "

ICRC contends that appellees' verified petition fails to properly assert the truth of the matters attested to under oath. The

relevant parts of the superior court petition appear as follows:

"Comes now Alan K. Wilson, Mayor of the City of Muncie, who swears as he is informed and verily believes:

\*　　\*　　\*　　\*　　\*　　\*

[signed]
Alan K. Wilson, Mayor
City of Muncie, Indiana

"Subscribed and sworn to before me this 2nd day of December, 1980.

My Commission Expires:　　[signed]

January 12, 1984　　Thomas L. DeWeese, Notary Public Residing in Delaware County, IN."

The language of T.R. 11(B) requires an affiant to represent that statements made in a *verified* pleading or notice are *true. Hodges, supra; Aetna Glass Corp. v. Mercury Builders, Inc.,* (1969) 145 Ind.App. 286, 250 N.E.2d 598. Concerning whether verification must be *positive,* affirming the absolute truth of the matter concerned or whether verification on *information and belief* is' sufficient, it has long been held that:

*"No statement can go beyond the belief of the party making it.* That belief may arise from personal observation, from sight or from sound, *from information derived from others,* or as the result of a logical conclusion from other known facts. But we know that sight or sound may deceive, as information derived from other persons may mislead. They can, at most, when united, produce but one result, conviction of the mind, or in other words, belief. *When, therefore, one states his belief in the truth of a statement, the assertion is as strong as language can make it."* (Emphasis added.) *Curry v. Baker, Governor,* (1869) 31 Ind. 151, at 155–156; *Workman v. Workman,* (1943) 113 Ind.App. 245, at 264, 46 N.E.2d 718, at 725.

The verification in this petition substantially complies with T.R. 11(B) and the cases cited. The affiant affirmed (swore) under oath, based on information he believed to be true (verily believes), the requisite information for the trial court to take jurisdiction under IND.CODE § 4–22–1–14. This petition was executed before a notary public, and implicitly subjected the affiant to penalties for perjury.

■ Appellees' petition to introduce newly discovered evidence to ICRC was not properly verified. The relevant portions appear as follows:

"Come now the respondents, by Alan K. Wilson, Mayor of the City of Muncie, who being first duly sworn alleges as follows:

\*　　\*　　\*　　\*　　\*　　\*

"Subscribed and sworn to before me this 2nd day of December, 1980.

My Commission Expires:　　[signed]

January 12, 1984　　Thomas L. DeWeese, Notary Public Residing in Delaware County, IN."

This petition fails for the same reasons stated in *Hodges, supra,* 402 N.E.2d 1231, at 1232:

"The petition in the instant case was not verified. While petitioners swore that they made certain statements, they did not swear that the statements they made were true."

ICRC was therefore correct in denying appellees' petition to introduce new evidence. Nevertheless, the trial court legally assumed jurisdiction based on appellees' properly verified petition of December 2, 1980.

■ ICRC next contends that the trial court lacked jurisdiction for failure to join Milton Smith, the original complainant, as a party to the review proceedings. ICRC maintains that Smith was an indispensable party under Ind.Rules of Procedure, Trial Rule 19(A)(2)(a). This rule provides that:

"(A) Persons to be joined if feasible. A person who is subject to service of process shall be joined as a party in the action if: ·

\*　　\*　　\*　　\*　　\*　　\*

(2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may:

(a) as a practical matter impair or impede his ability to protect that interest[.]"

A similar argument was raised in the case of *Lutheran Hospital, etc. v. Dept. of P.W., etc.,* (1979) Ind.App., 397 N.E.2d 638. This Court held that:

"Implicit in this argument is the erroneous assumption that the only remedy for failure to include all parties necessary for a just adjudication is dismissal of the suit. However, with but one exception not applicable here, an action need not be dismissed merely because an indispensable party was not named. TR. 19(B); 2 Harvey, Indiana Practice, Civil Code Study Commission Comments at 247 (1970).

"Indeed, where an indispensable party is not named the correct procedure calls for an order in the court's discretion that he be made a party to the action or that the action should continue without him. *To the extent that the Department believed the township trustees or the Indiana Department of Mental Health were indispensable parties, it could have joined them pursuant to Ind.Rules of Procedure, Trial Rules 14(A)(2) and 20(A)(2)* as it did with respect to the State Department." (Emphasis added.) 397 N.E.2d at 647.

Assuming Smith was an indispensible party, the trial court nevertheless properly denied his motion to dismiss for lack of jurisdiction. Under these facts, ICRC should have joined Smith pursuant to Ind. Rules of Procedure, Trial Rules 14(A)(2) and 20(A)(2). Likewise, Smith could have sought intervention under T.R. 24. The record does not indicate that ICRC or Smith ever took *positive* action to secure the joinder of Smith as a party. The trial court did not err in denying ICRC's motion to dismiss.

■ ICRC next claims that the trial court lacked jurisdiction to review this case because appellees failed to timely file the record of proceedings. The record reveals that appellees applied for and received three extensions of time in which to file the record. IND.CODE § 4–22–1–14 provides in part that:

"Any party or person so filing such verified petition for review with such court shall within fifteen (15) days thereafter secure from such agency a certified copy of the transcript of said proceedings before the agency including the order or administrative adjudication sought to be reviewed and file the same with the clerk of such court in which such action for review is pending. *An extension of time in which to file such transcript shall be granted by said court in which such action for review is pending for good cause shown.* Inability to obtain such transcript within time shall be good cause. Failure to file such transcript within said period of fifteen (15) days, or to secure an extension of time therefor, shall be cause for the dismissal of such petition for review by the court or on petition of any party of record to the original proceeding." (Emphasis added.)

The "good cause shown" requirement is mandatory and applies to both initial and any subsequent time extensions. *Int'l. Union, supra.* Failure to comply with this requirement deprives a trial court of jurisdiction over a cause of action. *Int'l. Union, supra; Gleason, supra.*

■ In the case at bar, the record does not disclose *good cause shown* for the first two time extensions granted by the trial court. ICRC argues that absent any indication contained in the record, this Court cannot presume that these motions were granted for good cause. However, the law in Indiana is to the contrary. On appeal, this Court must indulge all reasonable presumptions in favor of the trial court's rulings, and the record must exhibit the errors for which reversal is sought. *First Nat'l. Bank v. Penn-Harris-Madison Sch.,* (1970) 255 Ind. 403, 265 N.E.2d 16; *State v. Kuespert,* (1980) Ind.App., 411 N.E.2d 435. It should be presumed that the trial court granted the first two extensions upon a showing of good cause.

■ Furthermore, while filing the transcript is jurisdictional, it is a matter of jurisdiction over the particular case, and may be waived. *See, Bd. of Trustees v.*

*City of Ft. Wayne,* (1978) 268 Ind. 415, 375 N.E.2d 1112. It does not appear from the record that any timely objection was made to appellees' first two requests for time extensions. Failure to timely object constitutes a waiver of any objection to the grant of those extensions. *City of Ft. Wayne, supra; State ex rel. Metropolitan Thoroughfare v. Nutting,* (1964) 246 Ind. 105, 203 N.E.2d 192. In all respects, the trial court properly assumed jurisdiction over this case.

■ Addressing this case on its merits, ICRC argues that the trial court employed improper standards of review in setting aside ICRC's order. In reviewing decisions made by ICRC, a trial court must follow the provisions of IND.CODE § 4–22–1–18:

"On such judicial review such court shall not try or determine said cause de novo, but the facts shall be considered and determined exclusively upon the record filed with said court pursuant to this act.

"On such judicial review if the agency has complied with the procedural requirements of this act, and its finding, decision or determination is supported by substantial, reliable and probative evidence, such agency's finding, decision or determination shall not be set aside or disturbed.

"If such court finds such finding, decision or determination of such agency is:

(1) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; or

(2) Contrary to constitutional right, power, privilege or immunity; or

(3) In excess of statutory jurisdiction, authority or limitations, or short or [sic] statutory right; or

(4) Without observance of procedure required by law; or

(5) Unsupported by substantial evidence, the court may order the decision or determination of the agency set aside. The court may remand the case to the agency for further proceedings and may compel agency action unlawfully withheld or unreasonably delayed.

"Said court in affirming or setting aside the decision or determination of the agency shall enter its written findings of facts, which may be informal but which shall encompass the relevant facts shown by the record, and enter of record its written decision and order or judgment."

The language of this statute has been interpreted as follows:

"A trial court cannot weigh conflicting evidence, which appears in the record of the hearing, for the purpose of determining for whom it preponderates. If there is any substantial evidence to support the finding of the Commission, the court may not disturb the Commission's decision. *Indiana Education Employment Relations Board v. Board of School Trustees of Baugo Community Schools* (1978), Ind.App., [sic] 176 Ind.App. 680, 377 N.E.2d 414, 416. But an administrative determination must have a reasonably sound basis of evidentiary support. Further, the reasonableness of the inferences which an administrative agency employs to arrive at ultimate facts is a question appropriate for judicial determination, a 'question of law.' *Indiana Civil Rights Commission v. Sutherland Lumber Co.* (1979), Ind.App., 394 N.E.2d 949, 952." *Indiana Civil Rights Com'n v. Midwest Steel,* (1983) Ind.App., 450 N.E.2d 130, at 137–138.

It necessarily follows that the duty of this Court on appeal is to determine whether ICRC's findings of fact and conclusions of law have a *reasonably sound basis* of evidentiary support. *Midwest Steel, supra.*

In 1973, Milton Smith was serving as a special officer on the Muncie Police force and had applied for appointment as a regular officer. All applicants for the position of regular officer were required to become members of the Muncie Police Pension Fund.

In August of 1973, Smith was required to take a psychiatric examination as a prerequisite to admission in the pension fund. The results of Smith's psychiatric tests in-

dicate that he responds to his own value system, denies reality, possesses significant anti-social feelings, and has a volatile disposition. The report concludes as follows:

"With a low normal intelligence and the emotional conflicts enumerated, the best measure of his predictability is how he has done thus far since he has been on the police force for two years."

The record further indicates that Smith's performance as a special officer was far from exemplary. His police record shows that he was suspended once for being late and once for conduct unbecoming an officer. He was deficient in paperwork, in that most of his traffic arrest tickets were voided for improper preparation, and accident reports were likewise unacceptable. Prior to joining the Muncie Police Department, Smith was fired by the Madison County Sheriff's Department for severely beating his girlfriend.

Smith's poor record of performance influenced the decisions of at least three of the five Pension Board members. A fourth member testified that he made his decision based entirely upon Smith's psychiatric report, and the fifth member was unavailable to testify.

A "discriminatory practice" is defined in IND.CODE § 22–9–1–3(*l*), which states in part:

"The term 'discriminatory practice' means the exclusion of a person, from equal opportunities because of race, religion, color, sex, handicap, national origin or ancestry; or a system which excludes persons from equal opportunities because of race, religion, color, sex, handicap, national origin or ancestry[.]"

This definition is quite similar to the corresponding provision of the Federal Civil Rights Act of 1964, Title VII, § 703(a), 42 U.S.C.A. § 2000e–2(a), and has been construed consistently with that statute. *Indiana Bell Tel. Co. Inc. v. Boyd*, (1981) Ind.App., 421 N.E.2d 660. Although not binding upon this Court, federal decisions are helpful in construing Indiana's Civil Rights Act, and have been cited in past Indiana cases.

*See, e.g., Boyd, supra; Indiana Civil Rights Com'n v. Sutherland Lumber*, (1979) Ind.App., 394 N.E.2d 949.

Smith's complaint to ICRC is based on a theory of "disparate treatment," as distinguished from the theory of "disparate impact." Disparate treatment may be characterized as follows:

" ' "Disparate treatment" . . . is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment.' " *International Brotherhood of Teamsters v. United States*, (1977) 431 U.S. 324, 335, 97 S.Ct. 1843, 1854, 52 L.Ed.2d 396 (n. 15); *Boyd, supra*, Ind.App., 421 N.E.2d 660, at 666.

When "disparate treatment" is alleged, the *motive* behind such treatment is highly significant and dispositive. *Boyd, supra*, citing *Ekanem v. Health & Hospital Corporation of Marion County*, (7th Cir.1978) 589 F.2d 316; *Barnes v. St. Catherine's Hospital*, (7th Cir.1977) 563 F.2d 324; *Frockt v. Olin Corporation*, (S.D.Ind.1972) 344 F.Supp. 369.

The basic allocation of burdens and order of presentation of proof in cases alleging "disparate treatment" were first set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 1819, 36 L.Ed.2d 668, and provides as follows:

"First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' *Id.*, at 802, 93 S.Ct., at 1824. Third, should the defendant carry this burden, the plaintiff

must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Id.*, at 804, 93 S.Ct., at 1825." *Texas Dept. of Community Affairs v. Burdine,* (1981) 450 U.S. 248, at 252–253, 101 S.Ct. 1089, at 1093, 67 L.Ed.2d 207, at 215.

The burden of establishing a prima facie case of disparate treatment is not onerous. The plaintiff must show:

"(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *McDonnell Douglas Corp., supra,* 411 U.S. at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 677.

While great weight must be given to ICRC's findings of fact, the question of whether a complainant has established a prima facie case is a question of law, properly subject to the scrutiny of this Court.

■ The record in this case does not indicate that Milton Smith sufficiently established a prima facie case of racial discrimination against the Pension Board. There was *insubstantial* evidence before ICRC indicating that Smith was *qualified* for the job. A wealth of evidence indicates that Smith was not only unqualified for the position, but also an undesirable candidate. Although ICRC alleges that Smith was treated different from white candidates, there is no evidence to substantiate that the Pension Board's *motive* was improper.

ICRC also challenges the trial court's finding of fact No. 22, which provides:

"That evidence pertaining to past employment, performance at said past employment, and performance while a special police officer is relevant because the results of the psychological test indicate that past performance would be a measure of predictability of performance."

Smith's past performance is relevant, as determined by the trial court. While the general tenor of the psychological report is very negative, its conclusion stated that "the best measure of [Smith's] . . . predictability is how he has done thus far since he has been on the police force for two years." At least three Board members testified that this information was used in arriving at their ultimate decisions. ICRC erroneously ignored this fact in arriving at its decision.

■ ICRC finally asserts that proof of past discrimination by the Pension Board *reasonably infers* that Smith was also a victim of discriminatory practices. However, such inference cannot be properly considered *until* a prima facie case is established. As no such case was ever proved by Smith, there was no reason to consider past practices of the Board in this regard.

The judgment of the Delaware Superior Court, reversing ICRC, is in all respects affirmed.

Affirmed.

GARRARD, J., concurs.

STATON, P.J., concurs with opinion.

STATON, Presiding Judge, concurring.

While I agree with the majority that the trial court had jurisdiction because the transcript was timely filed, I believe that the theory of relation back coupled with the theory of jurisdiction over the particular case better supports this position. As the majority states, the Commission's failure to object allowed the trial court to maintain jurisdiction even though a showing of good cause did not appear on the first two motions requesting time extensions. Therefore, the third motion which contained a proper statement of good cause related back to the proper filing time. Because the relation back theory cures any error which may have occurred and because the trial court did not set a time limit for filing the transcript, it was timely filed approximately two weeks after the trial court had granted the third time extension. *See In-*

*diana Civil Rights Commission v. Holman* (1978), 177 Ind.App. 648, 380 N.E.2d 1281.