INDIANA CIVIL RIGHTS COMMIS-SION and Shelly Jean McKee, Appellants (Respondents Below),

v.

KIDD & COMPANY, INC., Appellee (Petitioner Below).

No. 57A03–8607–CV–204.

Court of Appeals of Indiana, Third District.

April 8, 1987.
Rehearing Denied May 11, 1987.

Linley E. Pearson, Atty. Gen. by Frederick S. Bremer, Deputy Atty. Gen., Indianapolis, for appellant Indiana Civil Rights Com'n.

Michael C. Healy, Indianapolis, for appellant Shelly Jean McKee.

John R. Fleck, Fort Wayne, for appellee.

STATON, Judge.

Shelly Jean McKee was employed by Kidd & Company, Inc., a marshmallow manufacturer, to drive a semi-trailer truck in a team with her husband, Fred. When Fred's employment ended, Shelly asked to work as a solo driver. Instead, Kidd laid her off, saying she was not qualified to drive solo. The Indiana Civil Rights Commission (ICRC) determined that Shelly had been discriminated against based on her sex, and Kidd petitioned for review by the Noble Circuit Court. The trial court set aside ICRC's order, and ICRC and Shelly appeal, raising two issues:

I.  Did the trial court lack jurisdiction because Kidd failed to follow the provisions of the Administrative Adjudication Act in petitioning for judicial review?

II. Did the trial court err in setting aside ICRC's order because its Findings of Fact and Conclusions of Law are supported by substantial evidence?

We reverse.

I.

*Jurisdiction*

ICRC and Shelly argue that the trial court lacked jurisdiction because Kidd

failed to follow certain provisions of the Administrative Adjudication Act, at Ind. Code 4–22–1–14. Specifically, they allege that Kidd's petition for judicial review was not properly verified, and that neither the Attorney General nor the chairman of ICRC was personally served.

■ Compliance with the requirements of IC 4–22–1–14 is a condition precedent to the exercise of review jurisdiction by a trial court in administrative matters, *State v. Van Ulzen* (1983), Ind.App., 456 N.E.2d 459, 464, and one requirement is that a petition for review be verified. Shelly and ICRC allege that Kidd's petition was not verified because its president did not sign the petition itself, but signed a separate document. The document signed, however, was attached to, and incorporated by reference, the petition for review, as well as the Findings of Fact, Conclusions of Law, and the Order of ICRC, and Kidd's exceptions thereto. In this document, Kidd's president affirmed under oath, as certified by a notary public, that "all of the matters set forth in such Petition [were] true to the best of his knowledge and belief...." (Record, at 611–12). The petition for review was thus properly verified. *See Indiana Civil Rights Com'n v. City of Muncie* (1984), Ind.App., 459 N.E.2d 411.

■ Shelly and ICRC also attack the trial court's jurisdiction because the Attorney General and the chairman of ICRC were served with a copy of the petition by certified mail, rather than personally as required by IC 4–22–1–14. Shelly appeared by counsel from ICRC, and ICRC appeared by counsel from the Attorney General's office, both without objection.[1] Service by certified mail achieved the purpose for which the personal service requirement of IC 4–22–1–14 was intended, and we find substantial compliance. *Salem Community Sch. Corp. v. Richman* (1980), Ind.App., 406 N.E.2d 269, 272. Further, appearance without objection waived any want of notice. *Wabash Smelting, Inc. v. Murphy* (1962), 134 Ind.App. 198, 186 N.E.2d 586, 590.

## II.

### *Substantial Evidence*

Moving to the merits of this case, Shelly and ICRC argue that the trial court employed improper standards of review, and that it erred in setting aside ICRC's determination because it was supported by substantial evidence. Judicial review of ICRC decisions is governed by IC 4–22–1–18, which reads in part as follows:

> On such judicial review such court shall not try to determine said cause de novo, but the facts shall be considered and determined exclusively upon the record filed with said court pursuant to this act. On such judicial review if the agency has complied with the procedural requirements of this act, and its finding, decision or determination is supported by substantial, reliable and probative evidence, such agency's finding, decision or determination shall not be set aside or disturbed.
>
> If such court finds such finding, decision or determination of such agency is:
>
> (1) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; or
>
> (2) Contrary to constitutional right, power, privilege or immunity; or
>
> (3) In excess of statutory jurisdiction, authority or limitations, or short or [sic] statutory right; or
>
> (4) Without observance of procedure required by law; or
>
> (5) Unsupported by substantial evidence, the court may order the decision or determination of the agency set aside. The court may remand the case to the agency for further proceedings and may compel agency action unlawfully withheld or unreasonably delayed.

A trial court cannot weigh conflicting evidence, and if there is any substantial evidence to support the finding of ICRC, the court may not disturb its decision.

1. In his petition for enlargement of time within which to respond to the petition for judicial review, Shelly's counsel did mention the fact that *he* had not been served directly.

*Indiana Civil Rights Com'n v. City of Muncie* (1984), Ind.App., 459 N.E.2d 411, 417. Nevertheless, while ICRC's findings of fact must be given great weight, they must have a reasonably sound evidentiary basis, and the inferences used to arrive at ultimate facts must be reasonable. *Id.* Whether a complainant has established a prima facie case is a question of law, properly subject to the scrutiny of this Court. *Id.*, at 419.

The U.S. Supreme Court, in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, set out the elements of a prima facie case of employment discrimination. A complainant must show: (a) that she belongs to a protected group; (b) that she applied and was qualified for a position for which the employer was seeking applicants; (c) that, despite her qualifications, she was rejected; and (d) that, after her rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. *Id.* at 802, 93 S.Ct. at 1824.

Of course, as the Court itself noted, these elements are "not necessarily applicable in every respect to differing factual situations." The case before us is not a failure to hire case, as was *McDonnell Douglas*, nor is it a typical discharge or failure to transfer case. Shelly was already employed by Kidd as a team driver with her husband, Fred. When Fred's employment ended, Shelly informed Kidd that she would not be willing to drive in a team with any other man, and since Kidd's only other female driver was already successfully teamed, Shelly asked to be transferred to a solo driver position. Kidd fired her, instead.

ICRC determined that Shelly had presented a prima facie case composed of the following elements:

a. She is a female; and

b. She was employed as a truck driver by Kidd & Company; and

c. She had performed her duties satisfactorily; and

d. She had requested a transfer to a position as a solo driver; and

e. There was sufficient work available for Kidd & Company to employ another solo driver at the time of her request; and

f. She met the minimum qualifications for a position as a solo driver; and

g. Her request was denied.

ICRC conclusion of law No. 7. Given the unusual facts of this case, we find that these elements do, indeed, make up a prima facie case, and we will review them to determine whether they are supported by substantial evidence.

■ Kidd challenges the evidence to support ICRC's conclusion that Shelly was qualified to drive solo. ICRC's finding No. 37 indicates that during her employment with Kidd, Shelly had driven about 45,000 miles, without an accident or a conviction for a moving violation. Finding No. 17 reads, in part, as follows:

> Clearly, the majority of the mileage driven is highway mileage and most of that on freeways with at least four (4) lanes. Driving in congested cities and over two (2) lane highways was also a part of the mix, as well as driving up, and down, mountains. The various kinds of driving were, after the first two (2) or three (3) trips, divided fairly randomly between Fred and Shelly.

There is evidence to support these findings.

Kidd contends that, while Shelly did have the experience described above, she had never backed a truck up to a loading dock or in congested city traffic, as she would have to do driving solo. It is true that in its finding No. 18, ICRC found that "Fred always did the manevering [sic] at the point of delivery so that Shelly had never backed a rig into a dock to be unloaded, down an alley, or on a city street." Finding No. 44(d), however, reads in part as follows:

> When Shelly applied for the job, Kidd & Company gave her a road test. Under the applicable federal regulations, this test was to be "of sufficient duration to enable the person to evaluate the skill of the person who takes it at handling the motor vehicle" [49 C.F.R. § 391.31(c)] and include testing on certain specified

skills including "... (*o*)perating the vehicle in traffic ..." [49 C.F.R. § 391.31(c)(5) ] and "... [b]acking and parking the vehicle." [49 C.F.R. § 391.31(c)(8) ]. If said test is successfully completed, a certificate must be issued, 49 C.F.R. § 391.31(e), certifying that the person tested possesses sufficient skill to safely operate the vehicle. 49 C.F.R. § 391.31(f). Kidd & Company issued such a certificate for Shelly.

Thus, there was evidence that Kidd itself had certified that Shelly was capable of driving in traffic and backing a truck. ICRC's finding that Shelly was qualified to drive solo was supported by substantial evidence.

▪ Kidd also challenges ICRC's conclusion that there was sufficient work available to employ a solo driver. Kidd failed to raise this issue in its objections to the hearing officer's recommended findings of fact, conclusions of law, and order, and has waived it. In any event, Kidd did not advise Shelly of the unavailability of solo driver positions when it terminated her. Further, there was evidence that a male dockworker was transferred to a solo driver position shortly after Shelly's termination. We conclude that there was substantial evidence to support ICRC's finding that Shelly had presented a prima facie case of employment discrimination based on sex.

Once a complainant has proved a prima facie case, the burden shifts to the respondent to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas, supra,* 411 U.S. at 802, 93 S.Ct. at 1802. Kidd's stated reason for terminating Shelly was that she was not qualified to drive solo.

The burden then shifted to Shelly to prove that this stated reason was pretextual. *McDonnell Douglas, supra,* 411 U.S. at 804, 93 S.Ct. at 1825. This burden "merges with the ultimate burden of [proving] that she has been the victim of intentional discrimination. She may succeed in this either directly by [proving] that a discriminatory reason more likely motivated the employer or indirectly by showing that

the employer's proffered explanation is unworthy of credence." *Texas Dept. of Community Affairs v. Burdine* (1981), 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207.

ICRC concluded that Kidd's stated reason for terminating Shelly was unworthy of credence, ICRC conclusion of law No. 9, and Kidd challenges this conclusion. ICRC found that Kidd's claim that Shelly was unqualified to drive solo was based in part on the reported unwillingess of Pat Kearney and some other unidentified drivers to serve as a co-driver with her. ICRC found, and there was substantial evidence to support the finding, that these opinions were based on only occasional observation of Shelly's driving, that Kearney could remember only two incidents which supported his opinion, and that he could not even remember the season in which the second incident occurred. ICRC finding of fact No. 44(a)–(c).

ICRC further found that Kidd had certified that Shelly had passed a road test, discussed above, which by federal regulation was to include testing of a driver's ability to drive in traffic and to back and park a truck. As ICRC found, in finding No. 44(d), "If it complied with the regulations, then Kidd & Company *cannot* have believed she was unqualified. If it did not comply, its current assertions are unworthy of credence."

Even more damaging is ICRC's finding No. 44(f), supported by evidence, that Kidd first learned that Shelly had not backed a truck into a loading dock only *after* she had been terminated. This calls into serious question Kidd's assertion that it was the lack of this skill, in particular, that it relied on in determining that Shelly was unqualified to drive solo.

Finally, there was testimony that Kidd's traffic controller, Howard Moser, told Shelly that she would not be safe "out there", because a truckers' strike was in progress at the time Shelly requested a solo position. From this, ICRC inferred an attitude on Moser's part, "that females should be 'protected' from danger presumably because they can't protect themselves," ICRC find-

ing of fact No. 44(i), thus making it more likely that Kidd treated Shelly differently from other drivers on the basis of sex. While this is not the only inference which may be drawn from Moser's statement, we conclude that it is a reasonable one.

Taking this evidence together, we find that there was substantial evidence to support ICRC's conclusion that Kidd's stated reason for terminating Shelly was pretextual. As for the ultimate question of discrimination, because Shelly told Kidd that she would not drive in a team with a man other than her husband, and Kidd was not taking applications for a solo driving position, this case is somewhat problematical. It is true that the Indiana Civil Rights Law, at IC 22–9–1, was not intended to allow members of certain "protected groups" to tell their employers in what capacity or position they will work, and to provide redress if the employers do not comply.[2] Our review has shown, however, that there was substantial evidence to support ICRC's determination that Shelly was treated differently than other drivers because of her sex, and this is precisely what the Civil Rights Law was intended to prohibit. It follows that the trial court erred in vacating ICRC's order. Its decision is reversed with instructions to reinstate ICRC's order.

Reversed.

HOFFMAN and YOUNG, JJ., concur.

---

**2.** In fact, the statute itself provides that it is "the public policy of this State to protect employers ... from unfounded charges of discrimination." IC 22–9–1–2.